UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, Plaintiff, v. GABRIELA OLVERA, Defendant. | Case No.: 20-cr-00428-GPC **ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE** **[ECF No. 39]** |
|---|---|

Defendant Gabriela Olvera has filed a motion seeking compassionate release or reduction of her sentence under 18 U.S.C. § 3582(c). ECF No. 39. The Government opposes. ECF No. 48 ("Opp."). For the reasons that follow, Olvera's motion is GRANTED.

**I.  BACKGROUND**

Olvera was convicted by guilty plea of one count of Importation of Methamphetamine in violation of 21 U.S.C. §§ 952, 960. ECF No. 38. Olvera was sentenced to a term of imprisonment of 32 months, followed by 3 years of supervised release. *Id.* As Olvera has not yet been transferred to the custody of the Bureau of Prisons ("BOP"), she is currently serving her sentence at the Santa Ana City Jail. Olvera has served about 14 months, or over 40% of her sentence.

Olvera is a single mother of a thirteen-year-old son, G.G.Y. From the time G.G.Y. was born up until Olvera was arrested, both Olvera and G.G.Y. lived with Carmen Olvera, Olvera's mother and G.G.Y's grandmother. ECF No. 43 (Ex. A) at 8. While Olvera has been in custody, G.G.Y. was in the care of Olvera's sister, Aracely Hendricks, and Carmen Olvera. *Id.* Carmen Olvera cared for G.G.Y. during the day while Hendricks worked full-time. *Id.* On January 3, 2021, Carmen Olvera tested positive for COVID-19. *Id.* at 9. Her condition quickly deteriorated, and she died on January 10, 2021. *Id.* G.G.Y. continues to live with Hendricks, but she still is unable to care for him during the day while he attends remote schooling. *Id.* at 8–9. Since his mother's incarceration, G.G.Y. has been diagnosed with depression and Hendricks is seeking a therapist for him. *Id.*

## II.  DISCUSSION

Olvera now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been

>made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>. . .
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Olvera has satisfied the administrative exhaustion requirement, and second, whether Olvera has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).  One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*.  As one district court recently explained:

>The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A).  *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL

806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A.     Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release.  Olvera is not in BOP custody, but did send a written request for compassionate release to the Santa Ana City Jail and the U.S. Marshals Service.  ECF No 39-1 (Ex. B; Ex. C).  Both responded that they were without authority.  *Id.*  The Government does not dispute that an administrative request would be futile because Olvera is not in BOP custody.  Opp. at 3 n.1.  Accordingly, the Court finds that it can consider the merits of Olvera's motion.

### B.     Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction; or
>
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons."  The

Note specifies that "[t]he death or incapacitation of the caregiver of the defendant's minor child" constitutes an "extraordinary and compelling reason" which may justify compassionate release.

Olvera argues that the death of her mother, who was a primary caregiver of her son G.G.Y., constitutes an extraordinary and compelling reason for her release. The Government contends that release is not justified because Olvera has not demonstrated that no one else can provide the appropriate care for her child. Opp. at 4–5.

The Court finds that Olvera has presented an extraordinary and compelling reason for her release. As Olvera notes, even if the Court presumes the above policy statement applies, it does not require that defendant be "the only available caregiver" for the minor child in order for the death of the existing caregiver to constitute an extraordinary and compelling reason. *Compare* U.S.S.G. § 1B1.13 cmt. 1(C)(i) (identifying first qualifying family circumstance as "death or incapacitation of the caregiver of the defendant's minor child or minor children") *with* cmt. 1(C)(ii) (identifying second family circumstance as "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner"). In the span of a year, G.G.Y. has lost both of the caregivers who raised him—his mother to prison, and his grandmother to COVID-19. The adjustment to remote schooling during the pandemic has been exceedingly difficult for many families, but the confluence of tragedies G.G.Y. has experienced are unique. The Court declines to require Olvera to attempt to obtain care of her child from relatives and friends with whom G.G.Y. has no connection or who otherwise are not willing to assist in raising him. Accordingly, the Court determines that Olvera has presented extraordinary and compelling reasons for a reduction of her sentence.

\ \ \
\ \ \
\ \ \

### C. Public Safety and Sentencing Factors

The factors outlined in section 3553 and 3582 also require consideration of public safety, the seriousness of the offense, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii). The Government argues that the severity of Olvera's offense and her history with drug addiction counsel against a reduction of her sentence. Olvera's offense involved the importation of methamphetamine, a drug that has wrought serious harm on the community, and she does have a previous criminal history that appears to stem from her drug use. ECF No. 24 ("PSR") at 7–12. Olvera previously participated in residential and outpatient drug treatment programs, and maintained sobriety until several months before the instant offense. *Id.* at 14. Although the Court recognizes that Olvera has struggled with addictions that have contributed to her criminal behavior, the Court finds that the instant offense does not suggest that Olvera would be a danger to the community if placed on a sentence of home confinement with appropriate conditions. Olvera now has served approximately fourteen months, which is over 40% of her full sentence. If she is released, Olvera would live with her son and sister in Whittier, California. Accordingly, the Court finds that placing Olvera in home confinement would sufficiently mitigate the potential danger to the public, provide just punishment for the offense, and adequately deter future criminal conduct. 18 U.S.C. § 3553(a)(2). Further, imposing a condition of release that requires Olvera to undergo drug treatment would permit her to obtain medical care in the most effective manner, as she currently is not able to participate in RDAP while in the Santa Ana City Jail.

### III.    CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **GRANTED**, to be effective at the close of business today. Olvera's sentence is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3852(c), effective

6

immediately, to be followed by a 48-month term of supervised release under conditions set forth in the original judgment, plus the following added special conditions:

    (1) Olvera shall be placed in home confinement for a period of 12 months without electronic monitoring where she will be restricted to her residence at all times except for medical necessities, the following drug treatment program, and court appearances or other activities specifically pre-approved by the Court; and

    (2) Olvera shall participate in a program of drug abuse treatment, including drug testing and counseling, as directed by the probation officer.  Defendant must allow for reciprocal release of information between the probation officer and the treatment provider.  Defendant may be required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on ability to pay.

It is **FURTHER ORDERED** that Olvera shall remain in self-quarantine for a period of time not less than 14 days after her release.

Olvera is **HEREBY ORDERED** to report by telephone to the U.S. Probation Office in San Diego, California within 24 hours of her release from custody.

The Government shall serve copies of this order on the Warden of the Santa Ana City Jail and U.S. Marshals Commander Sandra Gatt at the Santa Ana City Jail immediately.  They shall immediately release Defendant Gabriela Olvera from custody.  In the event that the Warden or Commander or any party requests any clarification of or modification to this order, they shall make such request in writing immediately upon receipt of the order.

**IT IS SO ORDERED.**

Dated: March 4, 2021

Hon. Gonzalo P. Curiel
United States District Judge